# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | |
|---|---|
| **JACQUELINE EGHRARI-SABET, M.D.,** | \* |
| Plaintiff, | \* |
| v. | Case No.: GJH-19-2055 |
| | \* |
| **ENT, ALLERGY, AND ASTHMA CENTER PC,** | \* |
| Defendant. | \* |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Jacqueline Eghrari-Sabet, M.D. brings this civil action against her former employer, Defendant ENT, Allergy, and Asthma Center, P.C. ("ENTAAC"). ECF No. 1. She alleges a breach of contract claim and retaliation under the False Claims Act ("FCA"), 31 U.S.C. § 3730(h), based on her alleged wrongful termination. *Id.* Pending before the Court is Defendant's Motion to Dismiss. ECF No. 9. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). For the following reasons, Defendant's Motion to Dismiss is denied.

## I. BACKGROUND[1]

Plaintiff is a medical doctor specializing in allergies and immunology. ECF No. 1 ¶ 1. From 1999 until 2017, she was the sole owner of Jacqueline Eghrari-Sabet M.D. P.C. d/b/a Family Allergy & Asthma Care. *Id.* On June 29, 2017, Plaintiff entered into an agreement to sell her practice to Defendant, which is owned by Dr. Sudhir Sekhsaria and his son, Dr. Vibhav

---

[1] Unless otherwise stated, the background facts are taken from Plaintiff's Complaint, ECF No. 1, and are presumed to be true.

1

Sehksaria. *Id.* ¶¶ 2, 5. The closing date of the sale was August 1, 2017 (the "Closing Date"). *Id.* ¶ 5.

**A. Employment Agreement**

In addition to the payment of a cash price, the terms of the sale required the parties to execute a written employment agreement (the "Employment Agreement").[2] *Id.* The Employment Agreement provides that Plaintiff would be employed by Defendant for a two-year term starting on the Closing Date, and that she would then be entitled to renew her term of employment for five additional one-year terms. ECF No. 1-2 at 5.[3] With respect to her work schedule, the Employment Agreement provided that Plaintiff would "work two (2) days per week commonly on a six-to-eight (6-to-8) hour clinic schedule per day at the Gaithersburg Office on days which [were] agreed upon by both [Plaintiff] and [Defendant]." *Id.* at 2. Plaintiff could use her scheduled working hours to "provide [Defendant] with all information, suggestion, and recommendations regarding [Defendant]'s business, of which [Plaintiff] ha[d] knowledge that may be of benefit to [Defendant]." *Id.* at 3. The Employment Agreement also stated that Plaintiff was to be paid an annual salary of $250,000. *Id.* The parties agreed "to negotiate in good faith the amount of an adjustment of [Plaintiff]'s annual salary for each renewal term …," but "in no event" would her "annual salary be less than $250,000 for any renewal term." *Id.*

The Employment Agreement also provided for Defendant's cooperation with clinical trials conducted by Plaintiff. It stated that Plaintiff could form a new entity to conduct clinical research trials and to handle other matters related to media, marketing, and promotion unrelated

---

[2] The Employment Agreement and other documents referenced in the Complaint are attached as exhibits, so the Court may consider the contents of these documents without converting the Motion to Dismiss into a motion for summary judgment. *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").
[3] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

2

to Defendant. *Id.* at 2. That new entity was permitted to enter into a lease agreement with Defendant for the use of office space and other resources, and if requested by Plaintiff or her new entity, Defendant was to negotiate the terms of such a lease agreement "promptly and in good faith." *Id.*

Next, the Employment Agreement provided that each party could terminate the Agreement "for cause." *Id.* at 5. The Employment Agreement defined "for cause" as follows:

> Either party may terminate this Agreement by the nonbreaching party giving at least thirty (30) days' written notice of a material breach of this Agreement in which event this Agreement shall terminate thirty (30) days after such notice. The notice shall contain a description of the breach. If such a breach is capable of cure and provided the alleged breaching party diligently pursues such cure, the termination shall be extended for a reasonable time beyond thirty (days) to permit such cure.

*Id.* Defendant was also permitted to terminate the Employment Agreement if Plaintiff engaged in misconduct, her license to practice medicine was terminated, suspended, or not in good standing, or she was convicted of a felony or other criminal violation involving moral turpitude. *Id.* at 5–6.

Finally, the Employment Agreement provided that "failure of either party to enforce any provision of this Agreement shall not be construed as a waiver or limitation of that party's right to subsequently enforce and compel strict compliance with every provision of this Agreement." *Id.* at 7.

### B. Alleged Breaches of the Agreement and Retaliation

In 2018, Dr. Sekhsaria and Defendant's office manager, Linda Baird, began to mismanage the practice. ECF No. 1 ¶ 16. The volume of allergy and immunology patients at Defendant substantially decreased and many of the most veteran clinic support staff and front-office employees chose to leave. *Id.* On numerous occasions, Ms. Baird encouraged that Plaintiff's patients be moved onto the schedule of another medical provider, and she often denied

Plaintiff's requests to be listed on the schedule. *Id.* ¶19. Defendant's personnel would also inform Plaintiff's patients that she was retiring, no longer accepting new patients, or had limited appointments available, all of which were false, and Defendant's management, including Dr. Sekhsaria, repeatedly stated to staff that Plaintiff would be leaving the practice. *Id.* ¶ 18.

In December 2018, Dr. Sekhsaria and Plaintiff had a meeting over dinner at which they discussed Defendant's practice, patient care, and plans for future growth. *Id.* ¶ 15. Dr. Sekhsaria voiced no concerns regarding Plaintiff's performance of her work obligations, the number of hours she was working, or the cost of her salary. In April 2019, Plaintiff had another conversation with Dr. Sekhsaria regarding Defendant's status, specifically the lack of qualified staff and ongoing mismanagement. *Id.* ¶ 17. During that conversation, Dr. Sekhsaria stated that Defendant could not afford to continue paying Plaintiff the salary to which she was entitled under the terms of the Employment Agreement, but at no point did he assert that Plaintiff had failed to comply with her obligations under that Agreement. *Id.*

At some point during her employment by Defendant, Plaintiff formed FAAR Institute LLC ("FAAR") and presented Defendant with an equitable draft lease agreement for the purpose of conducting clinical research. *Id.* ¶ 25. On April 14, 2019, Dr. Sekhsaria emailed Plaintiff to tell her that Defendant would need to withdraw from all studies it was currently participating in. ECF No. 1-5 at 3. That same day, Plaintiff responded that "[t]he current studies are not conducted by [Defendant]. They are conducted by FAAR Institute. I am responsible for them." *Id.* Dr. Sekhsaria responded that FAAR "does not have a contract to conduct research onsite at [Defendant]." *Id.* at 2. He therefore asked that Plaintiff close or withdraw from all studies being conducted onsite at Defendant's clinics. *Id.* On May 14, 2019, Dr. Sekhsaria sent a follow-up email stating that Defendant was "unable to sign a lease with FAAR or conduct any clinical

research" at that time. *Id.* He requested again that Plaintiff close or withdraw from any studies being conducted onsite at Defendant's clinics. *Id.* Defendant's refusal to enter into a lease agreement with Plaintiff prevented Plaintiff from securing contracts for multiple clinical research studies and forced her to decline multiple studies. ECF No. 1 ¶ 26.

On May 20, 2019, Plaintiff sent a letter to Dr. Sekhsaria expressing her concern that Defendant may have been committing Medicare fraud. *Id.* ¶ 21; ECF No. 1-3. Specifically, she was concerned that the practice was billing Medicare for medications based on the representation Defendant had purchased those medications and given them to patients, even though she was not aware that any such purchases had been made. ECF No. 1 ¶ 21; ECF No. 1-3. Instead, it appeared that Defendant was using free samples it had acquired and was billing Medicare as though they had been purchased. ECF No. 1 ¶ 21; ECF No. 1-3. Plaintiff also voiced her concern that several of the stock serums used by Defendant's staff to mix vaccines for patient shots were expired, ECF No. 1 ¶ 20; ECF No. 1-3, and that Defendant continued to use Plaintiff's personal name and the name of her prior practice, which threatened to associate her with Defendant's delinquency in the payment of several of its vendors' bills, ECF No. 1 ¶ 22; ECF No. 1-3. The email also referenced previous communications Plaintiff had with Defendant about these issues, including an email on May 10, 2019. ECF No. 1-3.

### C. Plaintiff's Termination

On May 24, 2019, Plaintiff's counsel sent a Notice of Breach and Demand for Cure letter to Defendant (the "Demand Letter"). *Id.* ¶ 27. The Demand Letter alleged that Defendant had failed to meet its obligations under the Employment Agreement by failing to negotiate a lease agreement in good faith on May 14, 2019, interfering with Plaintiff's ability to practice by making false statements about her plans to retire and mismanaging her schedule, and not

responding to the concerns she voiced about the use of expired medical compounds, improper billing practices, and the misuse of her name. ECF No. 1-6. The Demand Letter requested that by May 31, 2019, Defendant state affirmatively that it would comply with the terms of the Employment Agreement. *Id.* On May 31, however, Defendant sent a letter to Plaintiff terminating her employment effective June 30, 2019 (the "Termination Letter"). *Id.* ¶ 28. The Termination Letter stated that Plaintiff's termination was necessary because she had "materially breached the Employment Agreement by consistently failing to work the required 6–8 clinic hours per day twice a week for the past 23 months…" ECF No. 1-7. It provided, as an example, the hours she had worked during each month in 2018. *Id.* The Letter also stated that Defendant based these hours on clinic records, *id.*, even though Defendant had no standardized system for recording time that employees worked, ECF No. 1 ¶¶ 30, 31.

In fact, Plaintiff had fully complied with the Employment Agreement's requirements regarding her hours per week of work. ECF No. 1. ¶ 32. During many weeks, she worked for more hours than required under the Agreement by caring for patients and performing other duties, and she also devoted numerous additional hours to administrative matters relating to Defendant's patient care and marketing activities. *Id.*

Before Plaintiff received her last paycheck following her termination, Defendant lowered her annual salary from $250,000 to $200,000. *Id.* ¶ 34. This was reflected in her final biweekly paycheck, which was for approximately $7,692.000, a decrease from her prior biweekly paycheck of $9,615.00. *Id.*

### D. Present Litigation

On July 12, 2019, Plaintiff filed a Complaint in this Court alleging breach of contract, retaliation in violation of the FCA, and tortious interference with prospective advantage. ECF

No. 1. She subsequently voluntarily dismissed her tortious interference claim without prejudice. ECF No. 12. On August 7, 2019, Defendant filed a Motion to Dismiss. ECF No. 9. Plaintiff filed a response on August 21, 2019, ECF No. 13, and Defendant filed a reply on September 4, 2019, ECF No. 14.

## II.     STANDARD OF REVIEW

Defendant contends Plaintiff's Complaint must be dismissed for failure to state a claim. Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." *Hall v. DIRECTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017). However, Federal Rule of Civil Procedure 12(b)(6) provides for "the dismissal of a complaint if it fails to state a claim upon which relief can be granted." *Velencia v. Drezhlo*, Case No. RDB–12–237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012). A motion to dismiss under 12(b)(6) "test[s] the adequacy of a complaint." *Prelich v. Med. Res., Inc.*, 813 F. Supp. 2d 654, 660 (D. Md. 2011) (citing *German v. Fox*, 267 F. App'x 231, 233 (4th Cir. 2008)). Motions to dismiss for failure to state a claim do "not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Prelich*, 813 F. Supp. 2d at 660 (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). To overcome a Rule 12(b)(6) motion, a complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when "the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In evaluating the sufficiency of the Plaintiff's claims, the Court accepts factual allegations in the complaint as true and construes them in the light most favorable to the Plaintiff. *See Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of*

*Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005). However, the complaint must contain more than "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." *Nemet Chevrolet, Ltd v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). The court should not grant a motion to dismiss for failure to state a claim unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *GE Inv. Private Placement Partners II v. Parker*, 247 F.3d 543, 548 (4th Cir. 2001) (citing *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 249–50 (1989)).

### III. DISCUSSION

#### A. Breach of Contract Claim (Count I)

Plaintiff alleges that Defendant breached the Employment Agreement by paying her an annual salary less than $250,000, failing to negotiate a lease agreement with FAAR in good faith, and terminating her without cause. "[I]n order to state a claim for breach of contract, a plaintiff need only allege the existence of a contractual obligation owed by the defendant to the plaintiff, and a material breach of that obligation by the defendant." *RRC Northeast, LLC v. BAA Maryland, Inc.*, 413 Md. 638, 658 (2010) (citing *Taylor v. NationsBank, N.A.*, 365 Md. 166, 175 (2001)).

Here, the Complaint sufficiently alleges that the Employment Agreement created a contractual obligation for Defendant to pay Plaintiff an annual salary of at least $250,000. ECF No. 1 ¶ 10; ECF No. 1-2. The Complaint also sufficiently alleges that Defendant materially breached this obligation by lowering Plaintiff's annual salary from $250,000 to $200,000 on June 30, 2019, as reflected in her final paycheck before her termination. ECF No. 1 ¶ 34. Plaintiff has therefore stated a claim for breach of contract with respect to her annual salary.

Next, the Complaint sufficiently alleges that the Employment Agreement provided that Plaintiff, through FAAR, was permitted to enter into a lease agreement with Defendant in connection with clinical research and created a contractual obligation for Defendant to "negotiate the terms of such Lease Agreement promptly and in good faith." ECF No. 1 ¶ 12; ECF No. 1-2 at 2. The Complaint also sufficiently alleges that Defendant materially breached this obligation on May 14, 2019 by refusing to engage in negotiations about a lease agreement and ordering Plaintiff to take steps to close or withdraw from all clinical research studies. ECF No. 1 ¶ 25; ECF No. 1-5.

In support of its Motion to Dismiss, Defendant contends that its email correspondence with Plaintiff shows that "it is clear Defendant promptly responded to Plaintiff's request, negotiated, and provided an explanation as to why the entity (Defendant) could not move forward with a new lease for Plaintiff's purported clinical research, showing that it was acting in good faith." ECF No. 14 at 7. Whether the email correspondence should be interpreted as Defendant suggests and whether this conduct amounts to good faith negotiation are merits issues that are not appropriate for the Court to resolve at the motion to dismiss stage. *See Prelich*, 813 F. Supp. 2d at 660 (stating that motions to dismiss for failure to state a claim do "not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses"). At this point, it is sufficient that the Complaint alleges that Defendant refused to negotiate a lease agreement and that the relevant email correspondence could reasonably be interpreted as a refusal to negotiate. Accordingly, Plaintiff has stated a claim for breach of contract based on Defendant's failure to negotiate in good faith.

Finally, the Complaint sufficiently alleges that the Employment Agreement created a contractual obligation for Defendant to terminate Plaintiff only for cause. ECF No. ¶ 13; ECF

9

No. 1-2. The more difficult question is whether the Complaint sufficiently alleges a breach of that obligation. Defendant contends that the Termination Letter explained that it terminated Plaintiff for failing to work the required number of hours under the Employment Agreement, a material breach, and therefore it met its obligation under the Agreement. In opposition, Plaintiff contends that she did work the required number of hours and that Defendant's review of her hours is incorrect, and therefore Defendant's stated reason for Plaintiff's termination was inaccurate and not reasonably believed to be true by Defendant.

The Court finds that Plaintiff has adequately pleaded a breach of contract claim based on her termination. Where a plaintiff challenges her employer's decision to terminate her for cause, "the jury may not review whether the factual bases for termination actually occurred or whether they were proved by a preponderance of the evidence submitted for its review." *Towson Univ. v. Conte*, 384 Md. 68, 85 (2004). Instead, the proper role of a jury "is to review the *objective* motivation, *i.e.,* whether the employer acted in objective good faith and in accordance with a reasonable employer under similar circumstances when he decided there was just cause to terminate the employee." *Id.* (emphasis in original). "The jury's inquiry should center on whether an employer's termination was based upon any arbitrary, capricious, or illegal reason, or on facts not reasonably believed to be true by the employer." *Id.*

Here, Plaintiff has alleged sufficient facts to raise an inference that she was terminated based "on facts not reasonably believed to be true by [Defendant]." *See id.* The Complaint alleges that Plaintiff "has fully complied with the Employment Agreement's requirements regarding her hours per week of work. Indeed, many weeks, [Plaintiff] worked for more hours caring for patients and performing other duties than required under the Employment Agreement. In particular, [Plaintiff] has devoted numerous additional hours to administrative matters relating

to [Defendant]'s care of patients as well as marketing…" ECF No. 1 ¶ 32. The Complaint alleges further that Defendant based its termination on clinic records "to which it purportedly had full access during that entire 23-month period [that Defendant claimed she was not working the requisite number of hours]", but Defendant had never raised the issue before nor did it have a "punch-in or similar system that would record the precise time that [Plaintiff] was working or performing services under the Employment Agreement." *Id.* ¶¶ 30, 31. Contrary to Defendant's contention that these allegations are "vague, non-specific, and generic," *see* ECF No. 14 at 4, these allegations "allow[] the Court to draw the reasonable inference that [Defendant] is liable" for terminating Plaintiff for a cause it did not reasonably believe to be true. *See Iqbal*, 556 U.S. at 678; *see also Britton v. Tech., Automation & Mgmt., Inc.*, Case No. JFM–08–536, 2008 WL 2477453, at *5 (D. Md. June 16, 2008) (denying motion to dismiss where the plaintiff alleged sufficient facts to raise an inference that defendant's decision to terminate him for cause was arbitrary and capricious). Accordingly, Plaintiff has stated a claim for breach of contract based on her termination, and therefore Defendant's Motion to Dismiss as to Count I is denied.[4]

### B. Retaliation (Claim II)

Plaintiff alleges that Defendant retaliated against her in violation of the FCA's whistleblower provision, 31 U.S.C. § 3730(h), when it terminated her after she raised concerns about its fraudulent billing practices. Section 3730 provides that an employee "shall be entitled to all relief necessary to make [her] whole, if [she] is discharged, demoted, suspended, threatened, harassed, or in any manner discriminated against in the terms and conditions of employment because of lawful acts done by [her] in furtherance of an action under this section or

---

[4] Plaintiff claims that Defendant waived any right to terminate her based on her alleged failure to work the required number of hours because it waited twenty-three months to do so. Because the Court concludes that the Complaint states a claim for breach of contract regardless of any waiver by Defendant, it need not address this argument at this time.

other efforts to stop 1 or more violations of this subchapter." 31 U.S.C. § 3730(h). "[T]o sufficiently plead a § 3730(h) retaliation claim and thus survive a motion to dismiss, a plaintiff must allege facts sufficient to support a 'reasonable inference' of three elements: (1) [she] engaged in protected activity; (2) [her] employer knew about the protected activity; and (3) [her] employer took adverse action against him as a result." *United States ex rel. Grant v. United Airlines Inc.*, 912 F.3d 190, 200 (4th Cir. 2018). "As to the first element, § 3730(h) defines two types of protected activity – acts 'in furtherance of an [FCA action]' (the 'first prong'), or 'other efforts to stop 1 or more [FCA violations]' (the 'second prong')." *Id.* (citing 31 U.S.C. § 3730(h)(1)).[5] Under the second prong, "an act constitutes protected activity where it is motivated by an objectively reasonable belief that the employer is violating, or soon will violate, the FCA." *Id.* "A belief is objectively reasonable when the plaintiff alleges facts sufficient to show that [she] believed [her] employer was violating the FCA, that this belief was reasonable, that [she] took action based on that belief, and that [her] actions were designed to stop one or more violations of the FCA." *Id.* at 201–2. The plaintiff's actions need not lead to a viable FCA action, but they must "have a nexus to an FCA violation." *Id.* at 202.

Here, the Complaint sufficiently alleges that Plaintiff engaged in protected activity. The FCA imposes liability on any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval [to the government]." 31 U.S.C. § 3729(a)(1)(A). The Complaint alleges that on at least May 10, 2019 and May 20, 2019, Plaintiff expressed her concern that the Defendant was submitting Medicare claims for medications it had not actually

---

[5] Section 3730(h) was amended in 2010 to include the second prong of protected activity. *See Grant*, 912 F.3d at 201. In its Motion to Dismiss, Defendant largely relies on the pre-2010 statute and case law interpreting that statute. The Court will therefore ignore any arguments based on law that is no longer valid.

purchased, a potential FCA violation.[6] ECF No. 1 at 3; *see* 31 U.S.C. § 3729(a)(1)(A). This concern was based on Plaintiff's personal knowledge that Defendant had not purchased certain medications, but had received free samples, and that these medications had been given to Medicare patients by Defendant's staff. *Id.* She asked Defendant to "ensure that [the free samples] are not improperly used to treat Medicare patients and that no claim is improperly submitted by [Defendant] for reimbursement from Medicare for the purpose of these biologic drugs." *Id.* This complaint "did not merely express concern about regulatory non-compliance, but instead alleged specific illegal, fraudulent conduct against the government." *See Grant*, 912 F.3d at 202. Accepting the facts alleged in the Complaint as true, it was objectively reasonable for Plaintiff to believe that Defendant had committed fraud and she took "efforts to stop" a potential FCA violation. *See Grant*, 912 F.3d 190; *Halasa v. ITT Educ. Servs., Inc.*, 690 F.3d 844, 848 (7th Cir. 2012) (finding a viable FCA retaliation claim where the complainant investigated suspected FCA violations and reported his findings "presumably to ensure that [the defendant] ended these practices and to prevent [it] from making any false certifications to the U.S. Department of Education").

The Complaint also sufficiently alleges that Defendant knew about this activity. The Complaint alleges that Plaintiff sent the May 20, 2019 communication about her concerns to Dr. Sekhsaria, and that she voiced her concerns to Dr. Sekhsaria on at least one occasion prior to that date. ECF No. 1 ¶ 20; ECF No. 1-3 at 2. Given that Plaintiff's alleged protected conduct *was* the

---

[6] In its opposition, Defendant complains that Plaintiff has not submitted a May 10, 2019 letter as part of her Complaint and therefore seems to suggest that any factual allegation based on that communication must be disregarded. ECF No. 14 at 9. This argument confuses the standard and burden at the motion to dismiss stage. It is sufficient that the Complaint contains an allegation that Plaintiff reported her concerns on May 10, 2019; Plaintiff need not provide evidence to prove her allegations at this stage.

submission of these letters, these allegations raise a plausible inference that Defendant knew about the protected conduct.[7]

Finally, the Complaint sufficiently alleges that Defendant took an adverse action against Plaintiff as a result of her protected activity. It alleges that on May 10, 2019 and May 20, 2019, she contacted Dr. Sekhsaria about her concerns regarding Defendant's billing practices, and then on May 31, 2019, she was terminated. ECF No. 1 ¶¶ 20, 28; ECF No. 1-3. Plaintiff's "termination, following close on the heels of [her] complaints, represents the ultimate action that an employer can take against a reasonable worker for whistleblowing." *Grant*, 912 F.3d at 203 (citing *Sec'y of Labor v. Mut. Mining, Inc.*, 80 F.3d 110, 112 (4th Cir. 1996)). Accordingly, Plaintiff has stated a claim for retaliation under 31 U.S.C. § 3730(h), and therefore Defendant's Motion to Dismiss as to Count II is denied.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is denied. A separate Order shall issue.

Date: February   20, 2020                    ___/s/_____
                                             GEORGE J. HAZEL
                                             United States District Judge

---

[7] In its opposition, Defendant claims that it "did not know about Plaintiff's purported protected activity." ECF No. 14 at 10. That may be true, and Defendant will be able to present or refute evidence as to this fact at a later stage of this litigation. At this point, however, the Court must accept Plaintiff's version of the facts as true, *see Albright*, 510 U.S. at 268, and Plaintiff has sufficiently alleged that she sent communications to Defendant regarding her concerns about their billing practices and that they therefore knew about her protected activity.

14